# EXHIBIT 1

(Proposed Amended Complaint)

UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JOSHUA TREY WHITE, | ) |
| Plaintiff, | ) Case No. 1:22-cv-00249 |
| v. | ) District Judge Katherine A. Crytzer |
| BLUECROSS BLUESHIELD of TENNESSEE, INC., | ) Magistrate Judge Christopher H. Steger |
| | ) JURY DEMANDED |
| Defendant. | ) |

## SECOND AMENDED COMPLAINT

Joshua Trey White ("Mr. White") states the following as his second amended complaint against Defendant BlueCross BlueShield of Tennessee ("BlueCross") for unlawful religious discrimination and religious hostility in the workplace which culminated in unlawful and wrongful termination. The unlawful religious discrimination, hostility, and wrongful termination violated Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* This action is also filed to seek recovery of severance benefits.

### PARTIES, JURISDICTION, AND VENUE

1. Mr. White is an individual and resident of Hamilton County, Tennessee.

2. BlueCross is a Tennessee corporation with its principal place of business in Hamilton County, Tennessee.

3. BlueCross is also an "employer" as defined by Title VII, 42 U.S.C. § 2000e(b), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-102(5).

1

4. Mr. White is asserting claims against BlueCross under federal law, namely Title VII. Accordingly, this Court has subject matter jurisdiction over this case pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over the defendant BlueCross because its principal office is located in Hamilton County, Tennessee and because this case arises out of BlueCross's action in Hamilton County, Tennessee.

6. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391 because BlueCross is located in Hamilton County, Tennessee and because this case arises out of actions by BlueCross in Hamilton County, Tennessee.

## FACTUAL BACKGROUND

7. BlueCross is a large corporation engaged in providing health insurance to residents of Tennessee.

8. BlueCross has multiple offices across the state of Tennessee, but its headquarters are located in Chattanooga, Hamilton County, Tennessee.

9. BlueCross employs more than 6,500 employees.

10. BlueCross had revenues of more than nine billion dollars ($9,000,000,000) in 2021.

11. BlueCross had a net income of more than five hundred twenty million dollars ($520,000,000) in 2021.

12. Mr. White was initially hired by BlueCross for the position of Senior Financial Analyst on or about March of 2011.

13. During the course of his employment, Mr. White was promoted on multiple occasions and had risen to become Vice President, Controller, and Chief Accounting Officer of BlueCross by the time of his wrongful termination in 2021.

14. Mr. White worked directly under and reported to BlueCross's CFO.

15. Mr. White worked at BlueCross' headquarters office in Chattanooga, Tennessee.

16. On August 11, 2021, BlueCross instituted a policy (the "Mandate") requiring all public-facing employees and officers at BlueCross to get the Covid-19 vaccine (the "Vaccine").

17. Mr. White was not a public-facing employee.

18. Mr. White had never engaged with customers or clients during his entire tenure at BlueCross.

19. Mr. White was, however, an officer of BlueCross.

20. On August 27, 2021, BlueCross notified Mr. White that all officers of BlueCross, including Mr. White, would be required to get the Vaccine by October 4, 2021.

21. At the time he received the notice that BlueCross was requiring him to get the Vaccine, Mr. White had a sincerely held religious belief that it would be morally wrong and against God's will for Mr. White to get the Vaccine.

22. Mr. White continues to sincerely hold that religious belief to this day.

23. The notification that Mr. White received from BlueCross referenced the possibility of the employee requesting a religious accommodation.

24. In response to the notification, Mr. White requested an accommodation for his religious beliefs and submitted a detailed written explanation of his religious beliefs and how getting the Vaccine would violate those beliefs.

3

25. Mr. White's request for accommodation included a letter from his church supporting his religious beliefs.

26. Additionally, Mr. White suggested reasonable accommodations which would not impose any undue burden on BlueCross.

27. BlueCross would not have been unduly burdened by Mr. White's requests because Mr. White was not a public facing employee and had no access to BlueCross' clients and customers.

28. Despite Mr. White's detailed written explanation and proposed accommodation, BlueCross responded to Mr. White on September 27, 2021 by claiming that it did not have sufficient information to evaluate and determine fully his eligibility for religious accommodation.

29. BlueCross did, in fact, have sufficient information to evaluate Mr. White's religious accommodation proposal.

30. BlueCross routinely told employees who requested a religious accommodation relating to the Mandate that they did not have sufficient information to evaluate or determine fully their eligibility for religious accommodations.

31. The statement that BlueCross did not have sufficient information was merely pretext for stalling and ultimately denying Mr. White's request for accommodation.

32. Despite BlueCross' discriminatory pretextual statement, Mr. White attempted to work with BlueCross and provide more information.

33. Mr. White asked BlueCross what specific additional information he could provide to help BlueCross make a determination.

4

34. BlueCross responded to Mr. White's question by acknowledging that it had all the information it needed and that no additional information was necessary.

35. BlueCross had a policy or practice of responding to religious accommodation requests in the same way that it responded to Mr. White's request.

36. Upon information and belief, BlueCross initially responded to every single Mandate-related religious accommodation request by stating that it did not have sufficient information to make a decision.

37. Upon information and belief, whenever an employee followed up with BlueCross after being told that BlueCross did not have sufficient information, BlueCross advised that it did not need more information.

38. Upon information and belief, BlueCross never attempted to gather additional information from an employee about his or her religious accommodation request (relating to the Mandate) after advising the employee that it did not have sufficient information.

39. BlueCross' response to Mr. White about insufficient information was an obfuscation tactic designed to cover for BlueCross's intention to deny Mr. White's religious accommodation request no matter what.

40. Similarly, BlueCross's response to other religious accommodation-seeking employees was an obfuscation tactic designed to cover for BlueCross's intention to deny all of those employees' requests for religious accommodation relating to the Mandate.

41. Upon information and belief, BlueCross denied every single employee's request for a religious accommodation relating to the Vaccine Mandate.

42. BlueCross did, however, acknowledge that Mr. White's religious beliefs and religious objections to the Vaccine were sincerely held.

5

43. BlueCross's September 27, 2021 response to Mr. White also included something they called an "accommodation."

44. BlueCross's purported "accommodation" was to allow Mr. White an additional 30 days to get the Vaccine.

45. BlueCross's purported "accommodation" still would have forced Mr. White to violate his religious beliefs because it still required him to get the Vaccine.

46. BlueCross's purported "accommodation" was not really an accommodation at all, but rather, just an extension of the inevitable.

47. BlueCross's offer to delay the Vaccine requirement for thirty days merely postponed the point at which BlueCross would require Mr. White to violate his beliefs.

48. BlueCross's purported "accommodation" was a mere façade attempting to cover its religious discrimination against Mr. White.

49. BlueCross also purported to offer to let Mr. White look for another position within BlueCross during the thirty-day period, but that was also a façade as BlueCross was requiring all officers to get the Vaccine.

50. BlueCross's purported offer to let Mr. White look for another position within BlueCross was also a façade for another reason: shortly after "offering" Mr. White a purported opportunity to look for another position within BlueCross, BlueCross imposed the Vaccine Mandate on all jobs or positions within BlueCross.

51. After receiving BlueCross's proposed "accommodation" of delaying the date of the violation of his religious beliefs by thirty days, Mr. White promptly spoke to his boss supervisor, John Giblin, the CFO of BlueCross, regarding the purported "accommodation."

6

52. Mr. White's boss, BlueCross's CFO, initially responded to Mr. White by saying that he had been instructed not to engage in any discussion or dialogue with employees who were requesting religious accommodation for the Vaccine requirement.

53. When Mr. White insisted that he had questions and that they needed to engage, BlueCross's CFO began pressuring Mr. White to abandon his religious faith or convictions.

54. Among other things, BlueCross's CFO responded to Mr. White's expression of religious convictions by specifically encouraging him to violate those convictions.

55. BlueCross's CFO urged Mr. White, "as a friend," to get vaccinated.

56. BlueCross's CFO also asked Mr. White, "Wouldn't God forgive you if you went ahead and received the Vaccine? It would be the right thing to do for your family."

57. BlueCross attempted to coerce Mr. White to alter Mr. White's religious practice and beliefs as a condition of avoiding adverse employment action.

58. Mr. White remained true to his religious convictions and did not yield to the CFO's pressure.

59. After receiving no accommodation assistance from his boss, Mr. White then sought dialogue with Human Resources.

60. On October 1, 2021, Mr. White participated in a conference call with BlueCross Human Resources Director Hal Gault, Human Resources consultant Michael Davis, and attorney Josh Wood.

61. Mr. Gault opened the conversation by encouraging Mr. White to express his concerns and ask questions.

62. Mr. White noted that BlueCross had not provided him with an accommodation and that the purported "accommodation" was illusory.

7

63. Mr. White further stated that BlueCross had not demonstrated that his proposed accommodation would cause an undue burden on BlueCross.

64. After a long pause and without any response to Mr. White's point, attorney Wood simply told Mr. White that "the company has determined that vaccination is required for your role as an officer."

65. When Mr. White pressed his position that BlueCross had not complied with Title VII, attorney Wood simply responded: "The company has determined vaccination to be required for your role as an officer, and as a company in the healthcare field, this is an appropriate expectation."

66. Mr. White noted that his questions were not being answered and then reiterated his questions and concerns.

67. Attorney Wood simply stated: "This is not an appropriate place to litigate this matter."

68. Mr. Gault then asked Mr. White to accept the "accommodation" offered by BlueCross.

69. Mr. White refused to accept the illusory "accommodation."

70. When Mr. White articulated his request for a religious accommodation to BlueCross Human Resources officials and attorney, BlueCross stonewalled Mr. White.

71. BlueCross' purported willingness to listen to Mr. White's concerns on October 1 was illusory as BlueCross refused to engage in any genuine dialogue with Mr. White and had already completely committed to denying Mr. White's religious accommodation request regardless of what he might say or what information might be presented.

72. BlueCross ignored Mr. White's request for any real religious accommodation.

8

73. Following his religious beliefs, Mr. White refused to get the Vaccine.

74. Mr. White proposed accommodations to BlueCross, but BlueCross was not interested in any accommodation that would allow Mr. White to avoid violating his religious beliefs.

75. As one alternative, Mr. White proposed to generally work remotely at home—as he and others had been doing anyway for quite some time—but to also get tested at his own expense on a weekly basis if he were going to be at the office or in the presence of others.

76. BlueCross refused to respond to or discuss this accommodation proposal.

77. As another alternative, Mr. White proposed to simply continue working remotely from home until the pandemic was over or less severe.

78. BlueCross refused to respond to or discuss this accommodation proposal.

79. The accommodation that Mr. White proposed would not have created any undue burden on BlueCross because Mr. White had no access to or interaction with customers or clients of BlueCross.

80. Furthermore, even if Mr. White were a public-facing employee, his refusal to take the Vaccine would not have created an undue burden for BlueCross because, as the CDC has stated numerous times, the Vaccine does not protect against transmission of Covid-19.

81. On October 4 or 5, 2021, BlueCross terminated Mr. White for failure to take the Vaccine.

82. Mr. White's termination resulted from BlueCross's intentional discrimination against Mr. White based upon his religious beliefs.

83. Mr. White's termination resulted from BlueCross's refusal to provide any reasonable accommodation for Mr. White's religious beliefs.

9

84. BlueCross also failed to provide Mr. White his severance pay when it terminated Mr. White.

85. Soon after Mr. White's termination, BlueCross announced a policy that allowed all officers and virtually all employees to work remotely.

86. After being terminated, Mr. White filed a charge of discrimination with the EEOC.

87. Mr. White subsequently asked for and received a right to sue letter from the EEOC.

88. Mr. White brings this lawsuit within 90 days from the date of the right to sue letter.

## COUNT I—VIOLATION OF TITLE VII

89. All preceding allegations are adopted and incorporated by reference as if fully re-instated herein.

90. Under 42 U.S.C. § 2000e et. seq., it is unlawful to discriminate against an employee on account of the employee's religious affiliation or religious beliefs.

91. Attempting to coerce an employee to change his religious beliefs as a condition of employment constitutes unlawful discrimination in violation of Title VII.

92. Under 42 U.S.C. § 2000e et. seq., an employer is required to provide reasonable accommodation of employees' religious beliefs.

93. Automatically denying a request for reasonable accommodation of the employee's religious beliefs constitutes discrimination on the basis of religious affiliation or beliefs.

94. Offering a bad-faith, illusory religious "accommodation" constitutes discrimination on the basis of religious affiliation or beliefs.

95. Stonewalling an employee's request for religious accommodations in an effort to deny such accommodations constitutes discrimination on the basis of religious affiliation or beliefs.

96. Termination of an employee for the employee's religious beliefs is discrimination on the basis of religious affiliation or beliefs.

97. BlueCross attempted to coerce Mr. White to change or violate his religious beliefs as a condition of employment.

98. BlueCross automatically denied Mr. White's request for reasonable religious accommodation.

99. BlueCross automatically denied Mr. White's request for reasonable religious accommodation as part of a broader policy or practice of denying all requests for religious accommodation relating to the Vaccine Mandate.

100. BlueCross offered a bad-faith, illusory religious "accommodation."

101. BlueCross stonewalled Mr. White's request for reasonable religious accommodations in an effort to deny his requests.

102. BlueCross terminated Mr. White because of his religious beliefs and refused to pay him severance benefits because of religious discrimination and hostility.

103. BlueCross failed to provide Mr. White with reasonable accommodation for his religious beliefs.

104. BlueCross did not make any good faith effort to provide reasonable accommodation for Mr. White's religious beliefs.

105. BlueCross demonstrated overt hostility to Mr. White's religious beliefs.

106. Allowing Mr. White to continue working at BlueCross without being vaccinated would not have created an undue burden on BlueCross.

107. BlueCross' actions against Mr. White constituted unlawful employment discrimination in violation of Title VII.

108. Mr. White's termination and failure to pay severance benefits based upon religious beliefs constituted unlawful employment discrimination in violation of Title VII.

109. Mr. White has suffered and continues to suffer lost wages, compensation, and other financial benefits as a proximate result of BlueCross's wrongful acts.

110. Mr. White has suffered and continues to suffer mental and emotional distress, anguish and grief as a proximate result of BlueCross's wrongful acts.

111. BlueCross is liable to Mr. White for the damages Mr. White has sustained and is continuing to sustain as a result of BlueCross' wrongful acts.

112. BlueCross is also liable to Mr. White for his lost wages and other financial compensation and benefits, including back pay and front pay.

113. As an alternative to front pay, Mr. White is entitled to be reinstated at his position by BlueCross.

114. BlueCross is also liable to Mr. White for punitive damages.

115. BlueCross is also liable to Mr. White for Mr. White's reasonable attorney fees and litigation expenses.

**COUNT II—VIOLATION OF THRA**

116. All preceding allegations are adopted and incorporated by reference as if fully restated herein.

12

117. Under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-301 et. seq. it is unlawful in Tennessee to discriminate against an employee on account of the employee's religious affiliation or beliefs.

118. Attempting to coerce an employee to change his religious beliefs as a condition of employment constitutes unlawful religious discrimination under the Tennessee Human Rights Act.

119. Pursuant to the Tennessee Human Rights Act, an employer is required to provide reasonable accommodation of employees' religious beliefs.

120. Automatically denying a request for reasonable accommodation of the employee's religious beliefs constitutes discrimination on the basis of religious affiliation or beliefs in violation of the Tennessee Human Rights Act.

121. Offering a bad-faith, illusory religious "accommodation" constitutes discrimination on the basis of religious affiliation or beliefs in violation of the Tennessee Human Rights Act.

122. Stonewalling an employee's request for religious accommodations in an effort to deny such accommodations constitutes discrimination on the basis of religious affiliation or beliefs in violation of the Tennessee Human Rights Act.

123. Termination of an employee for the employee's religious beliefs is discrimination on the basis of religious affiliation or beliefs in violation of the Tennessee Human Rights Act.

124. BlueCross attempted to coerce Mr. White to change or violate his religious beliefs as a condition of employment.

13

125. BlueCross automatically denied Mr. White's request for reasonable religious accommodation.

126. BlueCross automatically denied Mr. White's request for reasonable religious accommodation as part of a broader policy or practice of denying all requests for religious accommodation relating to the Vaccine Mandate.

127. BlueCross offered a bad-faith, illusory religious "accommodation" to Mr. White.

128. BlueCross stonewalled Mr. White's request for reasonable religious accommodations in an effort to deny his requests.

129. BlueCross terminated Mr. White because of his religious beliefs.

130. BlueCross failed to provide Mr. White with reasonable accommodation for his religious beliefs.

131. BlueCross did not make any good faith effort to provide reasonable accommodation for Mr. White's religious beliefs.

132. BlueCross demonstrated overt hostility to Mr. White's religious beliefs.

133. Allowing Mr. White to continue working at BlueCross without being vaccinated would not have created an undue burden on BlueCross.

134. BlueCross' actions against Mr. White constituted unlawful employment discrimination in violation of the Tennessee Human Rights Act.

135. Mr. White's termination and failure to pay severance benefits based upon religious beliefs constituted unlawful employment discrimination in violation of the Tennessee Human Rights Act.

136. Mr. White has suffered and continues to suffer lost wages, compensation, and other financial benefits as a proximate result of BlueCross's wrongful acts.

137. Mr. White has suffered and continues to suffer mental and emotional distress, anguish and grief as a proximate result of BlueCross's wrongful acts.

138. BlueCross is liable to Mr. White for the damages Mr. White has sustained and is continuing to sustain as a result of BlueCross' wrongful acts.

139. BlueCross is also liable to Mr. White for his lost wages and other financial compensation and benefits, including back pay and front pay.

140. As an alternative to front pay, Mr. White is entitled to be reinstated at his position by BlueCross.

141. BlueCross is also liable to Mr. White for punitive damages.

142. BlueCross is also liable to Mr. White for Mr. White's reasonable attorney fees and litigation expenses.

## COUNT III – BREACH OF CONTRACT

143. All preceding allegations are adopted and incorporated by reference as if fully restated herein.

144. When BlueCross offered Mr. White employment, BlueCross had a policy of providing severance benefits to employees in Mr. White's grade and above.

145. When BlueCross offered Mr. White employment, it also offered him a severance benefit applicable upon the termination of his employment.

146. When Mr. White accepted employment with BlueCross, the severance benefit was part of the terms of employment he accepted.

147. In the days leading up to Mr. White's termination, Mr. White asked a BlueCross Human Resources Department representative if he (Mr. White) would be getting his severance benefit.

15

148. The Human Resources Department representative advised Mr. White that yes, he (the representative) thought Mr. White would be getting his severance benefit.

149. Because of the lapse of time since Mr. White began employment with BlueCross, Mr. White has not been able to locate his personal copy of his employment offer letter or other employment benefit documentation from the time Mr. White was offered and began employment.

150. Despite initially expressing an intent to cooperate with Mr. White's request for documentation, the Human Resources Department kept delaying any substantive response.

151. As of the date when BlueCross terminated Mr. White, the Human Resources Department still had not given Mr. White a copy of his employment offer letter or any other documents relating to the employment offer or employee benefits.

152. Additionally, on the day of his termination, the Human Resources Department also advised Mr. White for the first time that he would not be receiving severance pay.

153. The day after Mr. White was terminated, he contacted Human Resources again and again requested a copy of his employment offer letter.

154. This time, Human Resources immediately responded by telling Mr. White that they could not give him a copy of his employment offer letter because he was no longer employed by BlueCross.

155. Upon being told that he would not be given a copy of his employment letter because he was no longer an employee of BlueCross, Mr. White next contacted a higher-level representative of the Human Resources Department in a continuing effort to obtain a copy of his employment offer letter or other documentation relating to his severance.

16

156. At this point, Mr. White was told that his employment offer letter had been "purged" from the system and therefore could not be produced.

157. Despite having previously claimed that Mr. White's employment offer letter had been purged from the system and could therefore not be produced, BlueCross eventually produced an offer letter after this lawsuit was filed.

158. The offer letter produced by BlueCross referenced other employee benefits not specifically listed or described in the letter.

159. The offer letter produced by BlueCross also referenced other email correspondence containing more benefits information.

160. Due to the passage of time, Mr. White no longer has a copy of the other referenced email correspondence and accordingly requested such email correspondence from BlueCross.

161. BlueCross has advised that it does not have the other referenced email correspondence.

162. Due to the passage of time, Mr. White cannot attach a copy of the severance policy or other severance benefits documentation to this complaint because he does not have a copy, but Mr. White asserts that his employment terms and benefits included severance.

163. Additionally, upon information and belief, BlueCross has a policy and practice of providing severance benefits to all executives or at least all executives who were at least at Mr. White's level.

164. BlueCross's policy and practice of providing severance benefits to its executives constituted a term of employment.

165. To date, BlueCross has not paid Mr. White the severance benefits he was promised and to which he was entitled.

166. BlueCross's failure to pay Mr. White severance constituted a breach of contract.

167. BlueCross's failure to pay Mr. White severance was prompted by religious discrimination and hostility.

168. Mr. White was damaged as a proximate result of BlueCross's breach of contract and failure to pay severance benefits.

169. BlueCross is liable to Mr. White for the damages he sustained as a result of the breach of contract and failure to pay severance benefits.

WHEREFORE, Plaintiff Joshua Trey White prays as follows:

A. That process issue and that the Defendant be required to answer this complaint within the time provided by the law;

B. That a jury be empaneled to try this cause;

C. That Plaintiff be awarded compensatory damages in an amount to be proven at trial, which are continuing to accrue, which cannot be fully determined at the time of the filing of this complaint, which include back pay and front pay, which include other past and future financial benefits, and which also include damages for mental and emotional distress, anguish, and grief;

D. That, as an alternative to front pay, Plaintiff be reinstated to his employment at BlueCross with appropriate adjustments in compensation;

E. That Plaintiff be awarded punitive damages;

F. That Plaintiff be awarded prejudgment and post-judgment interest;

G. That Plaintiff be awarded his reasonable attorney fees and litigation expenses;

H. That all costs be taxed to the Defendant; and

I. That this Court provide Plaintiff with such other legal equitable relief as the Court deems appropriate.

This the 3rd day of January, 2023.

                                Respectfully Submitted,

                                DUGGINS LAW GROUP, PLLC

                                By: */s/Stephen S. Duggins*
                                    (Stephen S. Duggins, #13222)
                                8052 Standifer Gap Road, Suite B
                                Chattanooga, TN 37421
                                423/635-7113 (o)
                                423/635-7114 (f)
                                steve@dugginslawgroup.com